UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSIE NIELSEN, a single woman,<br><br>                Plaintiff,<br><br>   v.<br><br>CALIFORNIA CAPITAL<br>INSURANCE COMPANY, a foreign<br>corporation, and EAGLE WEST<br>INSURANCE COMPANY, a foreign<br>corporation,<br><br>                Defendants. | NO. 2:22-CV-0177-TOR<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiff's Motion for Partial Summary Judgment (ECF No. 43). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Plaintiff's motion for summary judgment (ECF No. 43) is **DENIED**. The Court grants partial summary judgment to Defendants pursuant to Fed. R. Civ. P. 56(f)(1).

//

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 1

**BACKGROUND**

This case arises out of a dispute between Plaintiff Josie Nielsen and her underinsured motorist ("UIM") insurance provider, California Capital Insurance Company, and its subsidiary Eagle West Insurance Company (together, "CIG"). ECF No. 59-3 at 2.  The amended complaint asserts that Defendants breached their contract, violated the Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA"), negligently handled Plaintiff's claim, and failed to act in good faith.  ECF No. 13 at 11-14.  Plaintiff now moves for an order of partial summary judgment on her IFCA and bad faith claims.  ECF No. 43 at 2.  As such, the following facts are construed in the light most favorable to Defendants.  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (holding that courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion).

On June 21, 2017, Plaintiff was injured in a vehicle crash when the Jeep Cherokee her then-boyfriend was driving swerved off-road to avoid hitting a deer. ECF No. 44-1 at 3-4.  The vehicle rolled over twice, and the airbags did not deploy.  *Id.* at 5.  Plaintiff suffered multiple injuries, including, most seriously, facet nerve injuries to the neck and a right posterior pelvis and hip injury.  ECF No. 43 at 3.  Plaintiff has had two hip surgeries since the accident.  *Id.* at 3.

Plaintiff settled with the at-fault driver in March 2021 for his insurance

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

policy limits of $100,000.  ECF Nos. 43 at 4; 71 at 2.  On March 15, 2021, Plaintiff submitted a demand letter requesting that Defendants tender her $1,000,000—the policy limit under her UIM coverage—and any remaining personal injury protection (PIP) coverage.  Ex. 63-3 at 12.  At the time of the demand letter, Plaintiff's medical specials totaled $83,365.37.  *Id.* at 10.

Ten days later, on March 25, 2021, the first adjuster assigned to Plaintiff's case extended an offer of $195,000.  ECF No. 44-7 at 7.  Eight months passed without response.  ECF No. 63-7 at 2-4.  On December 16, 2021, Plaintiff rejected the offer, attributing the delay in response to her need for further treatment for her injuries.  ECF No. 44-9 at 2.  Plaintiff explained that she had received radiofrequency ablation ("RFA") treatment in June 2021 to address her chronic bilateral neck pain.  *Id.* at 3.  RFA uses an electrical current to damage target nerve fibers, thereby mediating the sensation of pain.  ECF No. 44-2 at 3, ¶ 3.  Although the procedure can provide relief, the relief is generally only palliative and temporary, as the pain fibers typically regenerate over time.  *Id.* at ¶ 4; *see also* ECF No. 44-1 at 10.  Plaintiff, who had only received RFA treatment on one side of her neck,[1] claimed that she would need treatment on both sides, on at least a

---

[1] Plaintiff's treating physician, Dr. Patrick Soto, would not perform the procedure on both sides of the neck at the same time.  ECF No. 44-9 at 4.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

yearly basis.  ECF No. 44-9 at 4.  Based on this new need, Plaintiff claimed that

her past medical specials had risen to over $90,000 from the time she submitted her

initial demand, her future medical specials were likely to increase by

approximately $227,500, and the total value of her claim was now worth

$2,450,000.  *Id.*  Based on these new figures, she renewed her demand for a payout

of the $1,000,000 policy limit.  *Id.*

On January 13, 2022, Defendants responded that "there are questions of

causation and damages" and requested that Plaintiff participate in an independent

medical examination (IME).  ECF No. 63-8 at 2.  Plaintiff then sent a Notice of

Violation of IFCA to Defendants, stating that she would file a claim if the matter

was not resolved within the next 20 days.  ECF No. 63-9 at 3.  Nevertheless,

Plaintiff underwent an IME with Dr. Michael Battaglia, an orthopedic surgeon

hired by Defendants, in May 2022.  ECF No. 44-1.  Dr. Battaglia agreed that RFA

treatment was "within the standard of care," *id.* at 10, but disputed the necessity of

annual treatments, explaining that the relief generally only lasts for six months at a

time and was intended to be purely palliative, *id.* at 10, 15.  In a latter addendum

submitted in June 2023, Dr. Battaglia wrote that the literature submitted by

Plaintiff's treating physician did not support future injections because her

physiology differed from the patient populations in those studies.  ECF No. 72-6.

He added that he was "a little perplexed" why Plaintiff had recently received a

1  second RFA injection and that he believed Plaintiff's desire to receive future

2  treatment was motivated "by secondary and tertiary gain factors," which he

3  believed to include fear avoidance and the prospect of financial gain.  ECF No. 72-

4  6 at 5.

5          Based on the competing information from Dr. Battaglia, the newly assigned

6  claims adjuster called Plaintiff to offer $175,000 in "new money"[2] and $28,212.17

7  in PIP payments.  ECF No. 44-10 at 4.  Defendants asserted that this brought the

8  total value of the claim to $303,212.17 when the $100,000 from the at-fault driver

9  was included.  *Id.*

10         Plaintiff answered that she believed her claim was worth more than that, but

11 that she would accept the $175,000 as a minimum agreed-upon amount for the

12 time being while continuing to pursue a higher award.  ECF Nos. 43 at 7, 44-8 at 5.

13 According to the claims adjuster, the following exchange then occurred:

> I advised we would not be advancing the $175k at this time.  [Plaintiff's attorney] said it is not an advancement but the amount we are willing to pay and since this is a contract we have an obligation to pay it.  I advised we do not have an agreed value in this case.  The value is in dispute . . . [and] [w]e have not stipulated to any damages or value.

----

[2] Plaintiff defines "new money" as "additional payment that already takes into account any payment under personal injury protection coverage and the amount the at-fault driver paid."  ECF No. 51 at 6, ¶ 29.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

ECF No. 44-8 at 5.

In an e-mail later sent, the claims adjuster summarized Defendants' position as follows:

- We do not value this case at the $1,000,000 policy limits so we are not tendering the limits at this time.

- We are not going to advance pay the $175,000 new money offer we have made.  The value in this matter is in dispute.  The total settlement here would be $303,212.17 based on our new money offer, the $100,000 paid by the underlying carrier and the $28,212.17 in PIP payments.

- There appears to be $90,622.37 in incurred medical bills.  The settlement offer includes the medical bills plus $212,589.80 in general damages.

ECF No. 44-10 at 4.

Plaintiff wrote back,

Your email below indicates that you have placed a gross claim valuation of $303,212.17 for all of the injuries and subsequent treatment necessitated by the same, for your insured.  From this you deduct the $100,000 paid by the third-party['s] policy, and your PIP payments of $28,212.17.  [The] PIP payment is almost $7,000 under the PIP coverage amount[.]  Your current offer is $175,000 to be paid from [Plaintiff's] UIM policy.

Please confirm that this your current gross claim valuation for all of Ms. Nielsen's injuries suffered in her collision.

*Id.* at 3 (parentheses omitted).

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

Defendants replied confirming the offer but expressing confusion over Plaintiff's claim that the PIP payment offer was below the total PIP coverage. *Id.* at 2. Defendants added in closing that they were open to further discussion, but that any further mediation would require "a meaningful move off the policy limits." *Id.* at 1.

Plaintiff then filed suit in Stevens County Superior Court. ECF No. 1-2. Defendants removed the action to District Court for the Eastern District of Washington on July 25, 2022. ECF Nos. 1, 3. Plaintiff now brings this motion for summary judgment, contending that Defendants have violated IFCA and acted in bad faith. ECF No. 43. Defendants respond that the $175,000 does not represent the "undisputed value" of Plaintiff's claim and that this Court should grant summary judgment in their favor if it agrees that Defendants were not required to issue a payment upon Plaintiff's request. ECF No. 71 at 9.

## DISCUSSION

Two issues are presented: whether (1) Defendants have violated IFCA by unreasonably denying and failing to pay Plaintiff and (2) Defendants have acted in bad faith. The Court concludes that Defendants' actions do not give rise to a cognizable IFCA or bad faith claim. Fed. R. Civ. P. 56(f)(1).

## I.    Summary Judgment Standard

Plaintiff seeks partial summary judgment. The Court may grant summary

judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts establishing a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Harris*, 550 U.S. at 378.  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322.

## II.    IFCA Claims

Plaintiff argues that Defendants violated IFCA by unreasonably denying and failing to pay her undisputed insurance benefits, contrary to RCW 48.30.015.  ECF No. 43 at 11-17.  Plaintiff maintains Defendants violated IFCA by (1) internally valuing the claim much higher than the $175,000 finally offered or the $195,000 initially offered, (2) failing to pay Plaintiff the undisputed damages owed, (3) failing to fully investigate all aspects of her non-economic damages, and (4) making any payment of the compensation offered contingent upon Plaintiff's waiver of her rights to pursue additional benefits.  *Id.* at 13.

### A.    Internal Claim Valuation

Plaintiff alleges that internal notes from the Defendants and the deposition of the claims adjusters prove that Defendants valued her claim at $275,000 in May 2021 and between $316,287 to $521,287 in January 2022, which was unreasonably lower than the $303,212.17 offered in June 2022.  *Id.* at 13.  The evidence before the Court does not support that Defendants believed the value of Plaintiff's new money damages to be over $175,000 at the time the offer was made in June 2022. ECF No. 43 at 12.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

On March 25, 2021, the claims adjuster noted that a verbal authorization of $275,000 in new money had been given, with the same amount reserved.  ECF No. 44-8 at 3.  On January 7, 2022, the adjuster added new notes based on Plaintiff's claims and estimated that the range was "316,287-521,287 new money."  *Id.* at 4.  However, on January 13, 2022, the adjuster wrote:

> Had discussion with manager . . . We need more information in order to fully evaluate the damages in this case.  The future [RFA] medical claim was recently presented and she just had a recent procedure so the outcome and prognosis is unknown at this time.  Our evaluation and range is based on the future medical claim [FMC] as presented, but at this time we have questions on whether the need for FMC is related to this loss and reasonable and necessary.

*Id.*

Plaintiff also deposed both adjusters who had been assigned to her claim.  *See* ECF Nos. 44-5, 44-7, 72-1.  The first adjuster assigned to the claim extended the initial offer of $195,000.  ECF No. 44-7 at 9.  The following colloquy is taken from the deposition of the first adjuster:

> Q. [by Plaintiff's attorney]:  Okay.  And then just within a few weeks [of receiving the initial demand letter], you have valued the claim at $195, correct?
>
> A. [by first adjuster]:  Yeah.  $195,000, yes.
>
> . . .
>
> Q. Okay.  And at this point in time, you weren't asking for any more information; is that fair?
>
> A. That's my recollection.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

Q.  And you hadn't spoken with Ms. Nielsen or any witnesses, correct?

A.  Correct.

. . .

Q.  Did you do anything to investigate her future non-economic damages other than review [Plaintiff's demand letter]?

A.  No.

ECF No. 44-7 at 9-13.

Plaintiff also questioned the second adjuster about her claim evaluation process:

Q. [by Plaintiff's attorney]:  This [loss report] is dated May 2021; right?

A. [by second adjuster]:  Right.

Q.  All right.  And here they're valuing the claim again at $275,000; correct?

A.  Correct.

Q.  All right.  But is it typical for there only to be one [loss report] per claim?

A.  Oh, no, there could be multiple.  Like I said, if the reserve goes up or down by 100,000 or more, then one needs to be created or updated.

. . .

Q.  You never talked to Ms. Nielsen?

A.  We tried . . . [i]n the beginning before she had an attorney.  But her mom . . . would not allow her to talk to us.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

1       . . .

2       Q.  Did you ever try to contact any of Ms. Nielsen's doctors?

3       A.  No.

4       Q.  Did you ever try to contact any of Ms. Nielsen's friends or other
        family members?

5

6       . . .

7       A.  No.

        . . . .

8       Q.  You didn't request an IME until last year.

9       A.  Right, when we had the future medicals—

10      Q.  Okay.

11      A.  —being claimed.

12      . . .

13      Q.  Does CIG dispute any of the treatment Ms. Nielsen received?

14      A.  When?  What time frame?

15      Q.  At any point in time.

16      A.  Based on the IME, it appears that what she received up until the
        time of the IME was related to the MBA but the future is not.

17

18      ECF No. 44-5 at 712.

19          Respecting the initial offer made in March 2021, neither the notes nor the

20      depositions suggest that Defendants valued Plaintiff's claim over $195,000.

        ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
        JUDGMENT ~ 12

1    Plaintiff points to the fact that the first adjuster had verbal authorization to offer

2    $275,000.  ECF No. 44-8 at 3.  But the mere fact that the adjuster could have

3    offered up to $275,000 does not mean that Defendants believed Plaintiff's claim to

4    be worth that much—in fact, the offer of $195,000 suggests to the contrary.

5    Indeed, the first adjuster testified in her deposition that she believed the value of

6    the claim to be $195,000 at the time of initial offer.  *See* ECF No. 44-7 at 9, ¶¶ 17-

7    19 (Q: "[Y]ou have valued the claim at $195, correct?" A: "Yes.").

8          Plaintiff also argues that the fluctuating values in the adjusters' claims notes

9    indicate that Defendants valued her claim to be worth more than she offered.  For

10    instance, she notes that the value of the claim was $275,000 in May 2021, and

11    $316,287-$521,287 as of January 2022.  ECF No. 44-8 at 3-4.  But as Plaintiff's

12    own attorney elicited from the second adjuster during her deposition, multiple loss

13    reports were created throughout the duration of Defendants' investigation of the

14    claim as new information became available.  ECF No. 44-5 at 7, ¶¶ 15-19.

15    Furthermore, at the time the second offer of $175,000 was extended, on June 17,

16    2022, Defendants had seemingly retracted their belief that the case was worth a

17    minimum of $316,287 in new money.  ECF No. 44-10 at 3.  Although the note on

18    January 7, 2022, stated that the claim value was between $316,287-$521,287 in

19    new money, the adjuster wrote on January 13, 2022, that the company would be

20    undertaking further investigation because the current "evaluation and range is

based on the future medical claim [FMC] *as presented*, but at this time we have questions on whether the need for FMC is related to this loss and reasonable and necessary." ECF No. 44-8 at 4 (emphasis added). The second adjuster deposed also suggested that, by that time, Defendants had grown skeptical as to the candor of Plaintiff's self-reported damages due to her participation in certain extracurricular activities. ECF No. 44-5 at 5. Soon after, Dr. Battaglia conducted an IME of Plaintiff wherein he concluded that many of her future medical expenses were not necessary. Based on these facts, it is not reasonable to conclude that Defendants believed the value of Plaintiff's claim in June 2022 to be within the value range estimated on January 7, 2022. Without some further evidence, the Court is unable to conclude that Defendants estimated the new money value of Plaintiff's claim as greater than $175,000 at the time of the second offer.

The cases Plaintiff presents are also inapposite because the Defendants' two offers as compared to objective evidence of the value of the claim establish that the offers were not so trivial so as to amount to an unreasonable denial of the benefits to which Plaintiff was entitled per RCW 48.30.015(1). Plaintiff places special emphasis on *Morella v. Safeco Ins. Co. of Ill.*, No. C12-0672RSL, 2013 WL 1562032 (W.D. Wash. Apr. 12, 2013). ECF No. 43 at 12-13. In *Morella*, the insurer valued the plaintiff's claims under the terms of an uninsured motorist policy at $1,500, despite valuing the past medical expenses at approximately

$5,000 and general damages between $1,500 and $3,000. *Id.* at *1. When a different evaluator later calculated Plaintiff's medical expenses to total over $9,000 and estimated general damages between $1,500 and $6,000, the insurer again repeated its original settlement offer of $1,500. *Id.* at *2. The Court found the offer was an unreasonable denial of the payments to which Plaintiff was entitled, writing:

> Even if Safeco's March 2009 valuation were reasonable despite the failure to investigate, the amount the insurer chose to offer Morella reflected the lowest estimate of general damages and excluded all other expenses and losses covered by the policy. Given the undisputed facts of this case, the Court finds that an offer of $1,500 in payment of a claim that Safeco internally valued at seven to ten times as much and which had not been fully investigated was an unreasonable denial of the payment of benefits to which Morella was entitled.

*Id.* at *4.

Claimants seeking summary judgment on the question of whether an insurer unreasonably denied benefits under IFCA due to a discrepancy between the settlement offered and the internal valuation of the claim generally face an uphill battle. *See, e.g., Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1107-8 (W.D. Wash. 2017) (genuine issues of fact precluded summary judgment on defendant-insurer's IFCA claim); *Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083, 1092 (E.D. Wash. 2015) (same). To prevail on a claim for an unreasonable denial of benefits, an insured must establish that the insurer

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

1    "offer[ed] to pay a paltry amount that is not in line with the losses claimed, is not

2    based on a reasoned evaluation of the facts (as known or, in some cases, as would

3    have been known had the insurer adequately investigated the claim), and would not

4    compensate the insured for the loss at issue." *Morella*, 2013 WL 1562032 at *3;

5    *see also Bennett v. Homesite Ins. Co.*, 636 F. Supp. 3d 1267, 1274 (W.D. Wash.

6    2022) ("[A]n unreasonably low offer of payment can constitute a violation of

7    IFCA even if the insurer eventually pays.").  However, a good-faith dispute over

8    the value of a claim will not support an action for a denial of benefits under IFCA.

9    *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, 747 F. App'x 513, 515 (9th Cir. 2018).  "A

10   determination of whether an offer effectively denies an insured the benefits of the

11   insurance policy should focus 'primarily on what the insurer knew or should have

12   known at the time the offer was made.'"  *Heide*, 261 F. Supp. 3d at 1107-8

13   (citation omitted); *see also Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 16 F. Supp. 3d

14   1224, 1225 (E.D. Wash. 2014) ("The test is not whether the insurer's interpretation

15   of the policy is correct but whether the insurer's conduct was reasonable.").

16   Additionally, courts will reserve ruling on the merits of an IFCA claim until after

17   all genuine issues of material fact as to the offer's reasonability have been

18   determined by the trier of fact.  *Hiede*, 261 F. Supp. 3d at 1108; *see also, e.g.*,

19   *Langley*, 89 F. Supp. 3d at 1092 (the court will not rule on the reasonability of a

20   denial of benefits under IFCA when it lacks "a sufficient factual position from

1    either party to determine the reasonableness of the valuation and . . . the appraisal

2    process is ongoing.").

3         The present case is not like *Morella*, because, as detailed above, Defendants

4    never indicated that they valued the claim to be worth more than what was offered

5    to Plaintiffs.  Again, when the initial $195,000 in new money was offered to

6    Plaintiff, the adjuster averred that she believed the value of the claim to be worth

7    $195,000.  ECF No. 44-7 at 9, ¶¶ 17-19.  Similarly, there is no evidence to suggest

8    that Defendants later believed the value of Plaintiff's claim to be higher than the

9    $175,000 they offered in new money (for a total value of $303,212.17 taking the

10   PIP and settlement with the at-fault driver into account).  The previous, higher

11   valuations had been rejected in light of new medical testimony from Dr. Battaglia

12   and skepticism regarding Plaintiff's self-reports.  There is not a genuine dispute as

13   to the fact that Plaintiff and Defendants valued Plaintiff's damages differently.  As

14   such, the Court finds that Plaintiff's claim is not within the four corners of

15   *Morella*, and grants summary judgment in favor of Defendants on this portion of

16   Plaintiff's IFCA claims.  *See* Fed. R. Civ. P. 56(f)(1); *Celotex*, 477 U.S. at 322

17   (summary judgment will be granted "against a party who fails to make a showing

18   sufficient to establish the existence of an element essential to that party's case, and

19   on which that party will bear the burden of proof at trial.").

20   //

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 17

**B.    Failure to Pay Undisputed Damages**

Related to her first allegation, Plaintiff claims that Defendants violated IFCA by failing to pay the undisputed amount of her claim.  ECF No. 43 at 14.  In support of this argument, Plaintiff discusses *Beasley v. GEICO Gen. Ins. Co.*, 23 Wash. App. 2d 641 (2022), *rev. denied*, 200 Wash. 2d 1028 (2023).

Plaintiff's reliance on *Beasley*, like *Morella*, is unavailing.  As Plaintiff recounts, there the insurer offered the claimant $10,000 in settlement, which he agreed was the undisputed value of the claimant's UIM benefits.  23 Wash. App. 2d at 647.  In the unpublished portion of the court's opinion, it determined that because the insurer did not protest the undisputed UIM benefits were owed and should be paid prior to the final evaluation or settlement, the trial court properly instructed the jury that the insurer's failure to pay the $10,000 offered was an unreasonable denial of payment of benefits.  *Id.*, ¶¶ 82-86.

Here, as discussed above in Part A., the $175,000 offered in new money (or ($303,212 offered in total settlement) was not the undisputed value of Plaintiff's claim.  The only portion of Plaintiff's claim which appeared relatively undisputed was the PIP, and the second adjuster testified at her deposition that that portion of the claim had already been distributed.  ECF No. 44-5 at 14.  Because Defendants have proven there was a genuine dispute over the amount of the claim owed, the Court concludes that this portion of Plaintiff's IFCA claim is unsuccessful.  *See*

also *Beasley v. State Farm Mut. Auto Ins. Co.*, C13-1106RSL, 2014 WL 1494030
at *6 (W.D. Wash. Apr. 16, 2014) ("Where, as here, the delay in payment is due to
a dispute over the amount owed, the delay alone does not constitute a denial of
payment under IFCA.").  The Court grants summary judgment in favor of
Defendants on this issue.  *See* Fed. R. Civ. P. 56(f)(1); *Celotex*, 477 U.S. at 322.

### C.   Failure to Investigate Claim

Plaintiff similarly argues that Defendants unreasonably denied her of her
benefits under IFCA by failing to undertake an adequate investigation of her
claims.  The Court disagrees.

"Failure to adequately investigate, if proven, . . . constitute[s] a breach of
contract."  *Wall v. Country Mut. Ins. Co.*, 319 F. Supp. 3d 1227, 1235 (W.D. Wash.
2018).  Under Washington law, insurers must "fully and fairly investigate" claims.
*Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash.2d 269, 279 (1998).  However,
the case law does not specifically prescribe how insurers must go about fulfilling
this obligation.  This Court, along with other federal courts in Washington, have
held that an insurer's investigation may rely on the information provided by the
claimant so long as its reliance is "eminently reasonable." *Hiller v. Allstate Prop.
& Cas. Ins. Co.*, No. 11-cv-0291-TOR, 2012 WL 2325603, at *11 (E.D. Wash.
June 19, 2012); *see also, e.g.*, *Bridgham-Morrison v. Nat'l Gen. Assurance Co.*,
No. C15-927RAJ, 2016 WL 2739452, at *6 (W.D. Wash. May 11, 2016), *aff'd*,

739 F. App'x 381 (9th Cir. 2018) (insurer reasonably relied upon plaintiff's

documentation of her claim, which included a police report, medical records, an

earning loss letter and list of medical specials and lost wages).  However, an

insurer may not deny an insured benefits without conducting any investigation,

even if it appears that the loss or claim is not covered.  *See Aecon Bldgs., Inc. v.*

*Zurich N. Am.*, 572 F.Supp.2d 1227, 1236 (W.D. Wash. 2008).  An investigation is

reasonable even if it does "not necessarily investigate every discrete element" of

the claim.  *Bridgham-Morrison*, 2016 WL 2739452 at *6.  "The focus is not on

what could have been done, but on what was actually done by the insurer.  And an

insurer's initial investigation that does not identify every issue that contributed to

the insured's claim does not show that investigation was unreasonable or

insufficient."  *Id.*; *see also Young v. Safeco Ins. Co. of Am.*, 20-CV-01816-LK,

2022 WL 4017893, at *12 (W.D. Wash. Sept. 2, 2022) (multiple investigations do

not yield the conclusion that the original investigation was incomplete).

　　　　Defendants' investigations here were more than adequate.  Plaintiff takes

issue with the fact that the first adjuster freely admitted that she relied exclusively

on Plaintiff's report.  ECF No. 44-7 at 9-13.  However, Defendants' reliance on

Plaintiff's report was not unreasonable.  Plaintiff's initial demand letter was

detailed: it included, among other things, a description of the accident and attached

photos, Plaintiff's prior medical history and records, a history of Plaintiff's

diagnoses and medical treatment related to the incident, a list of medical special damages incurred since the incident, and an estimate of Plaintiff's general damages. ECF No. 63-3 at 1-12. The same letter also asked for a response within fourteen days. *Id.* at 12. Given the demand for a prompt response and the detail contained within the packet, it was eminently reasonable for Defendants to rely upon the information Plaintiff supplied rather than undertaking an independent investigation in extending an initial offer. *See Hiller*, 2012 WL 2325603, at *11.

For similar reasons, neither was the second adjuster's evaluation of the claim unreasonable. She, too, primarily relied on the updated demand letter from Plaintiff rather than individually contacting Plaintiff's providers and family members. ECF No. 44-5 at 7-12. Later, however, she and her manager determined that an IME was needed to evaluate Plaintiff's future medical claims. ECF No. 44-8 at 4. Plaintiff asserts that it was wrong of Defendants to "defer[ ] to its paid doctor's professed belief that her treating doctor's opinion that future RFAs [were] [un]necessary." ECF No. 51 at 5, ¶ 23. However, Plaintiff offers no authority which supports that Defendants' reliance on their medical expert's report was unreasonable. If anything, precedent shows that multiple investigations and changing offers throughout a claim's lifecycle is typical, particularly where, as here, the Plaintiff argues that the revelation of new information entitles her to a greater award. Accordingly, because Defendants' investigations of Plaintiff's

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21

claims were eminently reasonable, the Court grants summary judgment to

Defendants on this portion of Plaintiff's IFCA action.  *See* Fed. R. Civ. P. 56(f)(1).

### D.  Offer Contingency

Plaintiff finally argues that Defendants unreasonably denied her of her

insurance benefits under IFCA by making their offer contingent upon the execution

of a release form wherein she would agree not to pursue additional benefits under

the policy.  ECF No. 43 at 17-19.  Defendants answer that they never represented

to Plaintiff that a release was required to make claim payments.  ECF Nos. 71 at

18; *but see* ECF No. 101 at 9-10 (Plaintiff rebuffing Defendants' argument).

Even if the Court assumes that Defendant's offer of $175,000 in new money

was intended to serve as a final settlement of all Plaintiff's claims, it would not

give rise to an IFCA violation.  In support of her arguments, Plaintiff discusses

*Tavakoli v. Allstate Prop. & Cas. Co.*, C11-1587RAJ, 2012 WL 6677766 (W.D.

Wash. Dec. 21, 2012), WAC § 284-30-350(6) and several Tenth Circuit cases.

ECF No. 43 at 18-19.  These authorities are inapposite.  The *Tavakoli* court

examined a UIM insurer's duty to make partial payments.  2012 WL 6677766 at

*7-*8.  The court explained that while a UIM insurer could assert the same

defenses to liability as the underinsured driver, it could not assume an adversarial

position in fulfilling its policy obligations, which included the duties to make

payments.  *Id.* at *7.  However, the court qualified that determination by adding:

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 22

> If a dispute as to whether the uninsured driver had defenses to the insured's claim was the basis of a dispute over what damages [the insurer] owed, then it would be reasonable not to agree to payment. On the other hand, [the insurer] acts unreasonably if it refuses to pay damages that it reasonably believes it must eventually pay merely because it has not reached agreement as to other aspects of an insured's damages.
>
> Subject to these principles, a jury must decide whether [the insurer] acted unreasonably by not making a partial payment to [the plaintiff].

*Id.* at *7-*8.

The court in *Bridgham-Morrison* rejected the argument that a defendant-insurer owed a claimant partial payments for similar reasons, explaining, "[In] *Tavakoli* . . . there was evidence that the insurer's representatives had actually agreed that the insurer owed the insured certain expenses.  Plaintiffs have not presented any such evidence here.  Simply put, the Parties never reached any agreement as to any valuation of Plaintiffs' claim, meaning there were no 'undisputed' amounts."  2016 WL 2739452 at *8.

As explained above, the $175,000 offered was not undisputed.  Thus, it evident that Plaintiff's case is not on point with *Tavakoli*.

Plaintiff's reliance on WAC § 284-30-350(6) is also misplaced.  WAC § 284-30-350(6) provides that "[n]o insurer shall issue checks or drafts in partial settlement of a loss or claim under a specific coverage which contain language which release[s] the insurer or its insured from its total liability."  In the first

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 23

instance, it is apparent that the $303,212.17 was not offered as a partial settlement, but instead intended to function as a full settlement of Plaintiff's claims.  Either way, however, the Washington State Supreme Court has affirmatively held that "IFCA does not create a cause of action for regulatory violations."  *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wash.2d 669, 681 (2017).  Because Plaintiff cannot establish that Defendants tendered an offer of partial settlement on an undisputed portion of her claims and made that offer contingent upon an agreement to resolve all future claims, the Court grants summary judgment in favor of Defendants on this portion of Plaintiff's IFCA claim.  *See* Fed. R. Civ. P. 56(f)(1).

### III.    Bad Faith Claims

Plaintiff contends that Defendant's alleged IFCA violations and violations of various claims handling regulations under the Washington Administrative Code give rise to an independent bad faith claim.

In Washington, insurers have a duty to act in good faith and to deal fairly with their insureds, and violation of that duty may give rise to a tort action for bad faith.  *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 484 (2003) (citing *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d 751, 765 (2002)).  According to RCW 48.01.030, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 24

practice honesty and equity in all insurance matters."  Bad faith handling of an

insurance claim is a tort analyzed applying the same principles as other torts: duty,

breach of that duty, proximate cause, and damages.  *Smith*, 150 Wash.2d at 485.

Insurers have a duty to act in good faith separate from their contractual coverage

obligations to their insureds.  *See Safeco Ins. Co. v. Butler*, 118 Wash.2d 383, 393

(1992) (recognizing that insurer has an "enhanced obligation of fairness toward its

insured" that "imposes a duty beyond that of the standard contractual duty of good

faith"); *Tank v. State Farm Fire & Casualty Co.*, 105 Wash.2d 381, 385–86 (1986)

(holding that the fiduciary relationship underlying the insurer's duty of good faith

imposes a responsibility to give equal consideration to an insured's interests).  In

order to prove that the insurer acted in bad faith, the insured must show the breach

was "unreasonable, frivolous, or unfounded."  *Smith*, 150 Wash.2d at 484.

For the reasons discussed above in Part I, Plaintiff's bad faith claims based

on Defendants' alleged IFCA violations are dismissed, and summary judgment is

granted to Defendants pursuant to Fed. R. Civ. P. 56(f)(1) on those claims.

Plaintiff also claims that Defendants violated both WAC §§ 284-30-350(6) and

284-30-330(12).  The Court disagrees.  As considered above, WAC § 284-30-

350(6), which proscribes insurers from partially settling claims while releasing

themselves of total liability, was not violated because it is apparent that the

$303,212.17 was not offered as a partial settlement, but instead intended to

function as a full settlement of Plaintiff's claims. WAC § 284-30-350(12), for its part, creates liability for insurers who "fail[ ] to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy." Plaintiff does not explain how Defendants' offers and investigations unreasonably lagged, and, in light of the abovementioned discussion, the Court disagrees that Plaintiff has shown that some undisputed portion of the policy coverage was used to unduly influence settlements of other portions of the policy. Accordingly, summary judgment is denied on Plaintiff's bad faith claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment (ECF. No 43) is **DENIED**.

2. The Court grants partial summary judgment in favor of Defendants on Plaintiff's IFCA and bad faith claims pursuant to Fed. R. Civ. P. 56(f)(1).

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **OPEN**.

DATED September 18, 2023.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 26