UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSIE NIELSEN, a single woman,<br><br>                Plaintiff,<br><br>   v.<br><br>CALIFORNIA CAPITAL INSURANCE COMPANY, a foreign corporation, and EAGLE WEST INSURANCE COMPANY, a foreign corporation,<br><br>                Defendants. | NO. 2:22-CV-0177-TOR<br><br>ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Partial Summary Judgment (ECF No. 61). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Defendants' motion for summary judgment (ECF No. 61) is **DENIED**.

## BACKGROUND

This case arises out of a dispute between Plaintiff Josie Nielsen and her

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

underinsured motorist ("UIM") insurance provider, California Capital Insurance Company, and its subsidiary Eagle West Insurance Company (together, "CIG"). ECF No. 59-3 at 2. Plaintiff's amended complaint asserts that Defendants breached their contract, violated the Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA"), negligently handled Plaintiff's claim, and failed to act in good faith. ECF No. 13 at 11-14. Plaintiff also sought an award of attorney's fees and costs for the breach of contract pursuant to *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wash.2d 37 (1991). *Id.* at 11, ¶ 5.8.

Defendants move for partial summary judgment on Plaintiff's CPA claims and request for an award of attorney's fees under *Olympic S.S. Co.*, 117 Wash.2d 37. ECF No. 61. As such, the Court recounts the following facts in the light most favorable to the Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (holding that courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion).

On June 21, 2017, Plaintiff was injured in a vehicle crash when the Jeep Cherokee her then-boyfriend was driving swerved off-road to avoid hitting a deer. ECF No. 44-1 at 3-4. The vehicle rolled over twice, and the airbags did not deploy. *Id.* at 5. Plaintiff suffered multiple injuries, including, most seriously, facet nerve injuries to the neck and a right posterior pelvis and hip injury. ECF

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 2

No. 43 at 3. Plaintiff has had two hip surgeries since the accident. *Id.* at 3. Plaintiff settled with the at-fault driver in March 2021 for his insurance policy limits of $100,000. ECF Nos. 43 at 4; 71 at 2. On March 15, 2021, Plaintiff submitted a demand letter requesting that Defendants tender her $1,000,000—the policy limit under her UIM coverage—and any remaining personal injury protection (PIP) coverage. Ex. 63-3 at 12. At the time, Plaintiff's medical specials totaled $83,365.37. *Id.* at 10.

Ten days later, on March 25, 2021, the first adjuster assigned to Plaintiff's case extended an offer of $195,000. ECF No. 44-7 at 7. On December 16, 2021, Plaintiff rejected the offer, attributing the delay in response to her need for further treatment. ECF No. 44-9 at 2. Plaintiff explained that she had received radiofrequency ablation ("RFA") treatment in June 2021 to address her chronic bilateral neck pain. *Id.* at 3. RFA uses an electrical current to damage target nerve fibers, thereby mediating the sensation of pain. ECF No. 44-2 at 3, ¶ 3. Plaintiff, who had only received RFA on one side of her neck, claimed that she would need the procedure on both sides on at least an annual basis. ECF No. 44-9 at 4. Plaintiff alleged that, because of this new treatment, her past medical specials had risen to over $90,000 from the time she submitted her initial demand, her future medical specials were likely to increase by approximately $227,500, and the total value of her claim was now worth $2,450,000. *Id.* Based on these new figures,

she renewed her demand for a payout of the $1,000,000 policy limit. *Id.*

On January 13, 2022, Defendants responded that "there are questions of causation and damages" and requested that Plaintiff participate in an independent medical examination (IME). ECF No. 63-8 at 2. Plaintiff then sent a Notice of Violation of IFCA to Defendants, stating that she would file a claim if the matter was not resolved within the next 20 days. ECF No. 63-9 at 3. Nevertheless, Plaintiff underwent an IME with Dr. Michael Battaglia, an orthopedic surgeon hired by Defendants, in May 2022. ECF No. 44-1. Dr. Battaglia agreed that RFA treatment was "within the standard of care," *id.* at 10, but disputed the necessity of annual treatments, *id.* at 10, 15.

Based on the competing information from Dr. Battaglia, the newly assigned claims adjuster called Plaintiff to offer $175,000 in "new money."[1] ECF No. 44-10 at 4. Defendants asserted that this brought the total offer to $303,212.17 when the $100,000 from the at-fault driver, medical expenses, and PIP payments were included. *Id.*

//

---

[1] Plaintiff defines "new money" as "additional payment that already takes into account any payment under personal injury protection coverage and the amount the at-fault driver paid." ECF No. 51 at 6, ¶ 29.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

1    Plaintiff answered that she believed her claim was worth more than that, but

2 that she would accept the $175,000 as a minimum agreed-upon amount for the

3 time being while continuing to pursue a higher award.  ECF Nos. 43 at 7, 44-8 at 5.

4 The claims adjuster responded that Defendants would not be advancing the

5 $175,000 because it did not represent an agreed-upon value.  ECF No. 44-8 at 5;

6 44-10 at 4.  Defendants added that they were open to further discussion, but that

7 any further mediation would require "a meaningful move off the policy limits." *Id.*

8 at 1.

9    On June 30, 2022, Plaintiff filed suit in Stevens County Superior Court,

10 asserting claims for breach of contract, negligent claims handling, violations of

11 IFCA, and violations of the CPA.  ECF No. 1-2; *see also* ECF No. 13.  Defendants

12 removed the action to District Court for the Eastern District of Washington on July

13 25, 2022.  ECF Nos. 1, 3.

14                              **DISCUSSION**

15 **I.    SUMMARY JUDGMENT STANDARD**

16    The Court may grant summary judgment in favor of a moving party who

17 demonstrates "that there is no genuine dispute as to any material fact and that the

18 movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

19 on a motion for summary judgment, the court must only consider admissible

20 evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 5

party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II.    CONSUMER PROTECTION ACT CLAIMS

In her amended complaint, Plaintiff sought recovery under the CPA, RCW § 19.86, alleging that Defendants' improper claims-handling conduct caused injury to her business or property. ECF No. 13 at 14, ¶ 9.7. In their motion for summary

1  judgment, Defendants argue that Plaintiff admitted she was not claiming wage loss
2  or damage to property in her discovery responses.  ECF No. 61 at 3.  They add
3  that, while Plaintiff claimed in the same responses that she owned or maintained a
4  business, her business is self-admittedly irrelevant to her CPA claims.  *Id.* at 4.
5      Plaintiff responds that Defendants' requests for admissions were non-
6  specific, because they did not define a "claim [for] damage to property."  ECF No.
7  87 at 4; *see also* ECF No. 90 at 2, ¶¶ 2-3.  To her understanding, an injury to
8  property under the CPA is unrestricted to a commercial or business injury and may
9  include losses resulting from unpaid insurance benefits for personal injury
10 damages, as well as expenses incurred by a plaintiff in investigating a deceptive act
11 or practice.  *Id.* at 7-10.  She explains that since Defendants have not paid her any
12 insurance benefits to date and failed to reasonably investigate her insurance claim,
13 summary judgment is inappropriate at this stage.  *Id.* at 8-9.  She further asks that if
14 the Court finds her answer to Defendants' requests for admissions dispositive on
15 this claim, she be permitted to withdraw or amend those answers under Fed. R.
16 Civ. P. 36(b) to "clarify that she does not make an insurance claim for 'property
17 damage,' but . . . does assert she was injured under the CPA based on her unpaid
18 insurance benefits and . . . investigative costs."  *Id.* at 12.
19     A person injured in their business or property by a violation of the CPA may
20 bring a civil action may sue to enjoin further violations and to recover actual

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

damages, treble damages, and reasonable attorney's fees. RCW § 19.86.090. "In a private cause of action, the CPA requires a plaintiff to prove five elements: '(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.'" *Young v. Toyota Motor Sales, U.S.A.*, 9 Wash. App. 2d 26, 33 (2019) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 37 (2009)). The parties dispute here whether Plaintiff has properly identified an injury to her "property" under the fourth element.[2]

In recent years, Washington State courts have clarified what constitutes injury to "property" under the CPA. In *Ambach v. French*, the state supreme court refused to allow a plaintiff who was injured during a surgical procedure to recover under the CPA, explaining that her personal injury damages were non-compensable because they did not constitute an injury to her "business or property." 167 Wash.2d 167, 173-74 (2009); *see also Dees v. Allstate Ins. Co.*, 933 F.Supp.2d 1299, 1311 (W.D. Wash. 2013) (holding that a plaintiff could not recover the cost of her medical bills from an insurer under the CPA). However, in *Peoples v. United Servs. Auto. Ass'n*, the court appeared to embrace a more

---

[2] Plaintiff appears to accede that Defendants did not injure her "business" within the meaning of the CPA.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

expansive definition of an injury to property. 194 Wash.2d 771 (2019). There, the court considered a certified question from the District Court for the Western District of Washington regarding whether plaintiffs could maintain CPA suits against their insurance carriers for wrongful denials of PIP payments. *Id*. at 776. The court held they could, explaining,

> *Ambach* does not apply here because the plaintiffs do not seek to hold their insurance companies liable for their underlying personal injuries. Instead, they seek to hold their insurance companies liable for benefits owed under contract. We conclude that the deprivation of contracted-for insurance benefits is an injury to "business or property" regardless of the type of benefits secured by the policy.

*Id.* at 779; *see also id.* at 780 ("Claims mishandling and wrongful denial of benefits invade [an insured's] property interest, regardless of the type of event that triggers coverage.").

Cases following *Peoples* have allowed plaintiffs to maintain an action against their insurer under the CPA for the wrongful denial of insurance benefits even when the denial of benefits is not exclusively based on PIP coverage. *See W. Beach Condo. v. Commonwealth Ins. Co. of Am.*, 11 Wash. App. 2d 791, 805 (2020), *rev. denied*, 195 Wash.2d 1026 (2020) ("[R]ecoverable damages under both IFCA and the CPA can include policy benefits that were unreasonably denied, subject to the policy's limits and other applicable terms and conditions."). For example, in *Santiago v. GEICO Advantage Ins. Co.*, a plaintiff injured in a car

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

1  accident sought approximately $76,000 in medical expenses and general damages
2  from her UIM insurer.  C22-1370RSL, 2023 WL 5802523 at *2 (W.D. Wash. Sep.
3  7, 2023) (unreported).  The court agreed that plaintiff had stated a claim under the
4  CPA, explaining that the disputed sum which she sought under the terms of her
5  contract qualified as an injury to property.  *Id*. at *4.  The Ninth Circuit reached a
6  similar result in *Hopkins v. Integon Gen. Ins. Co.*, concluding that the plaintiff,
7  who claimed he was improperly denied reimbursement in approximately $900 of
8  expenses that exceeded his PIP coverage, established injury to property under the
9  CPA.  No. 21-35196, 2022 WL 851750, at *2 (9th Cir. Mar. 22, 2022)
10 (unreported).

11     Taking all facts and inferences in the light most favorable to Plaintiff, the
12 Court finds that she has stated a cognizable CPA claim.  Although Plaintiff's
13 demand for her policy limits stems from a personal injury, her allegations are
14 better characterized as a demand for benefits than a personal injury claim.  *See*
15 *Panag v. Farmers Ins. Co. of Washington*, 166 Wash.2d 27, 57 (2009) (defining
16 personal injuries as "damages for mental distress, embarrassment, and
17 inconvenience.").  Further, the Court is unpersuaded at this time by the argument
18 that Plaintiff's answer to Defendants' requests for admission were completely
19 dispositive of her CPA claims.  In view of the wider allegations of Plaintiff's
20 complaint, a genuine issue of material fact exists as to whether Plaintiff intended

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 10

her answer to mean that she had not suffered an injury to property via Defendants' refusal to tender her policy limits. *See* ECF No. 90 at 2, ¶ 2. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's CPA claims insofar as those allegations make a claim for wrongful denial of benefits.

Relatedly, Plaintiff also maintains that she should be permitted to pursue a CPA action for the investigative expenses she incurred in hiring an insurance expert, Robert Dietz, to evaluate her claim and payments made to her physician, Dr. Patrick Soto, for preparing opinions related to her claim to send to Defendants. ECF No. 90 at 2, ¶ 3. Defendants answer that Plaintiff's expenses are not true investigative expenses, but instead expenses incurred in litigation, which do not qualify as cognizable injuries under the CPA. ECF No. 112 at 2-3.

Defendants correctly observe that Washington law distinguishes between litigation expenses and investigative expenses incurred in pursuing a CPA action. *Panag*, 166 Wash.2d at 62-63. In drawing this distinction, courts have generally characterized "litigation expenses" as those incurred in determining whether a defendant's conduct gives rise to an actionable legal claim, whereas "investigation expenses" involve investigation of a deceptive business practice. *See, e.g., Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F.Supp.3d 856, 873 (W.D. Wash. 2021) (holding that expenses incurred in bringing the claim are not a cognizable injury, but investigative expenses resulting from a deceptive business practice

establish injury under the CPA); *see also, e.g., Universal Life Church Monastery Storehouse v. Am. Marriage Ministries*, C19-0301RAJ, 2022 WL 2317439, at *5 (W.D. Wash. June 28, 2022) (slip op.) ("[A]lthough expenses incurred in bringing the WCPA claim itself are not cognizable, '[i]nvestigation expenses and other costs resulting from a deceptive business practice sufficiently establish injury.'" (quoting *Panag*, 166 Wash.2d at 62)); *see also Spicher v. Am. Family Mutual Ins. Co., S.I.*, C22-1116 MJP, 2023 WL 5634210, at *5 (W.D. Wash. Aug. 31, 2023) (costs incurred in anticipation of litigation are non-compensable). Additionally, "[i]f the investigative expense would have been incurred regardless of whether a violation existed, causation cannot be established." *Panag*, 166 Wash.2d at 64 (citations omitted).

Any argument by Plaintiff that Dr. Soto's initial opinion regarding her need for future RFA treatment is unaccepted because that expense would have been incurred regardless of Defendants' allegedly improper final offer or not—Plaintiff's reported need for further bilateral neck pain relief procedures could not have necessarily been known to Defendants without Plaintiff's disclosure. At minimum, however, a genuine issue of material fact exists as to whether Dr. Soto's reply to Dr. Battaglia's IME report and Mr. Dietz's evaluation of Defendants' alleged insurance malpractice related to the investigation of an unfair act or

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

practice separate from the instigation of her CPA claim.  As such, the Court denies Defendants' motion for summary judgment as to Plaintiff's CPA claim.

## II.  REQUEST FOR ATTORNEY'S FEES

Defendants also ask the Court to dismiss Plaintiff's claims for recovery of attorney's fees under *Olympic S.S. Co., Inc.*, 117 Wash.2d 37, and its progeny, which have provided an equitable basis for successful claimants to recover attorney's fees when an insurer wrongfully denied coverage.  *See* ECF No. 61 at 11-12 (listing cases).  Defendants maintain that they have never denied coverage, but only disputed the value of Plaintiff's claim.  *Id.* at 13.  Plaintiff responds that Defendants are improperly asking the Court to prejudge the issue because the jury will have to resolve multiple coverage issues, including its failure to pay her undisputed benefits and whether their offer denied coverage for her future medical care.  ECF No. 87 at 14-15.

Under *Olympic Steamship*, a plaintiff is entitled to a fee award when the insurer's actions compel the claimant to "file a suit for damages to obtain the benefit of its insurance contract."  *Olympic S.S. Co.*, 117 Wash.2d at 52-53.  However, the rule is only available where the plaintiff-claimant "is required to litigate an issue of coverage, as opposed to the value of the claim."  *See Little v. King*, 147 Wash. App. 883, 891 (2008).

At this time, the Court finds that material issues of fact pervade as to whether Defendants denied Plaintiff coverage with respect to Plaintiff's claim for future medical treatment. It is true that Defendants and their agents have always acceded that Plaintiff's UIM coverage was in full force at the time of the incident and that Plaintiff was entitled to some undetermined benefits under the terms of that contract. *See, e.g.*, ECF No. 82-1 at 12. However, the nominal acceptance of coverage does not eliminate the question of whether Plaintiff is entitled *Olympic Steamship* attorney's fees because a significant part of Defendants' refusal to pay Plaintiff the full policy limit under the contract stems from their difference of opinion regarding Plaintiff's entitlement to future RFA treatment. Viewing the facts in the light most favorable to Plaintiff, a reasonable finder of fact could conclude that Defendants' valuation of the claim was based on a denial of Plaintiff's entitlement to coverage for future treatments. Accordingly, the question of whether Plaintiff is entitled to attorney's fees under *Olympic S.S.* is better reserved for after the jury has determined Plaintiff's need for future medical treatments.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (ECF No. 61) is **DENIED** as to Plaintiff's CPA claim.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

2. Defendants' Motion for Partial Summary Judgment (ECF No. 61) is

**DENIED** as to Plaintiff's request for attorney's fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wash. 2d 37 (1991).

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED September 25, 2023.



THOMAS O. RICE
United States District Judge

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15